Please step up. I think recognizing both of you, I know you know the rules. We'll give you whatever time you need, but please don't be too repetitive. The one thing I would say, don't waste your time on jurisdiction because we've got the case here and we know we're going to deal with it. With that, I'd say introduce yourselves and we'll roll. Okay, I'm Leslie Rosen on behalf of the appellant. Charles Kogut on behalf of the respondents. Alright, well, realize the mic there is not, it's just a report, it's not for us. Okay, I'll speak louder. This is a very simple legal question, very convoluted facts. And the question is simply, did this interlocutory order denying my client the right to have counsel appear for him, for them, when the case was nowhere near ready for trial and nobody had been deposed, was that an abuse of discretion? And I think the answer is yes. And the way it happened, this case was pending a long time, no doubt about it. But is that the reason, is that a good enough reason to just say, ah, the case is too old, goodbye. And I don't think so because when you study the facts in the record, you see that there were many, many delays. 1,700 pages, not mostly in English. I know. But what you do see in English shows that people were very careful and that there were a lot of delays for a lot of reasons. This woman died in test state in May of 2006. It looked like a nothing estate. It looked like she had a condo on Sheridan Road on the north side of the city and $1,600 in the bank. And it turned out that over the next five years, it took five years to find all her money, she had over $4 million. And she had never married. She had no kids. And my client's predecessor, Oleg, was the first person to come in. He came in through Henshaw on August 3rd of 2007 and filed an appearance. I don't know why he didn't file an affidavit of airship at that point. That would have been the logical thing. I do know that Henshaw is not typically a probate firm. But maybe, and I can't say why he didn't file an affidavit of airship at that time. It appears that later on, people, because they were not local, they were not even in the United States, were waiting until they could get the proper documentation to file properly. So my client, Oleg, files right away. Five months later, a local air finder, Michael Sussman, who does a great job, finds other heirs. Not as close. They're the father's brother's descendants. It took a while to map it. It takes a while. It's convoluted. We had it all mapped. My law clerk back there, he had fun with going through it all mapped. It took me a while. He's a genealogist now. But in fact, if in fact my client's claims are true, they are the true heirs, because they would just be the children of her half-brother or her two nephews. They would clearly be it. But so then why did they take so long? I mean, that's a fair question. Why did this go on? And the fight kept going on and on. And the public administrator really was to blame for quite a bit of the delay. We're all of the opinion that the public administrator did not, should not have been that pro on one side. It seems they stuck their nose where they shouldn't. Yes, that's my position. And actually, that's pretty much why we're here, because I presume that my opponent's going to get up and say to you, you know what, the money's business first. Let's forget about this. But the public administrator has bonds and has insurance. And that's a real claim. And I don't understand. Believe me, if I had been in this case, I would have filed a motion to compel against the public administrator. He had Crispin Von Romanoff, one of the two sons of Oleg, he came here for his deposition. He gave a DNA sample in October, late October of 2015. And by the time his lawyers filed to withdraw, a year and a half later, there were still no DNA results. And when you look through the record carefully, you see there's the Arnstein and Weir bill, 1502 to 1507 of the record. They met with the DNA guy. They thought about this. They got very involved, yet they never turned over any information. And that information perhaps could have been dispositive. And although my clients did have a hard time getting lawyers, they weren't here. Crispin was in Germany, and he needed records from Ukraine. And you can take judicial notice of the fact that in 2014, Ukraine was in the middle of a war, and it was not easy to get the records. So a lot of things took a long time. Two years would go by here, two years would go by there. It does seem like it took a long time, a particularly long time you could blame my clients for, after Oleg died. Why was nothing happening from 2013 to 2014? But that's the only real problem that they had. They did come in. They were given 21 days to get an attorney. Is that really an issue, though, with respect to whether or not an attorney may properly file their appearance? Excuse my voice. She's not a happy person. I'm sorry? But I won't be unkind. Good. Is that, I mean, the length of time that the case has gone on, was that really, in your opinion, any reason to deny or to even express an opinion with respect to whether an attorney could file? No. No, plenty of cases take that long in the probate arena. Sometimes heirs can't be found. There are heirs from other countries. I understand that after the market collapsed in 2008, people couldn't sell real estate, so certain decedents' estates ended up longer. No, there was no good reason for it. The lawyers came in. There are two excellent attorneys, very well-known in the probate court, Len LaRose and James Riley, who had been a judge, and they wanted to file an appearance. The only reason Riley couldn't do anything the two or three times he appeared is because he had entered an order. An agreed order, which actually is not even technically an order. It's a contract. So although I'm not fighting about Judge Riley appearing, I think that perhaps if the case gets remanded there is an argument to be made that he could appear because, as he said in his motion to correct the record, one day when three other judges were not present, Judge Coghlan, Judge Coleman, and Judge McGurry, I believe, he had a lot of calls and he entered an agreed order and nobody even corrected him. So my claim is that if it's a simple matter, this case should be remanded. Justice demands it. And there was no prejudice to anybody because nothing had been done. And, you know, I cited a number of cases for the proposition that, okay, you don't let somebody file an appearance when the case is ready to go to trial or at trial, but we're not in that situation at all. And so I think in this case there was great prejudice to my clients, particularly from the failure to turn over the DNA evidence and from the continued innuendo that my clients, Vadim Televed, the other air finder from New York, was a crook, basically. They're saying, yeah, he's known to be, you know, in other cases. But, again, it's not relevant. It's not relevant, right. So I think there was tremendous prejudice to my clients, and it was exacerbated by the public administrator's position. I will just say one other matter. In looking over the record yesterday, there was a document that suggested that perhaps they could reopen the estate under the Probate Act Section 24-9, and they cannot. There is a section in the Probate Act for reopening estates that have been closed, decedent estates, but it does not apply to realigning the heirs. It applies to when there are new assets that are found, and that's not this case. So this is the only option available to my clients. And if you have no other questions, I – No, thank you. Thank you. The question before the court here is whether the trial court abused her discretion in denying labor for the attorney. We think the public administrator abused their discretion. I don't think so in this case, Judge. You go back – I mean, the facts of this case, you know, the record, you said you've gone through it and looked at it. It is very complicated and such. But kind of the reason for that is this Mr. Vadim, which said it's not relevant at this point in time, but I think this is dragging on the case. Not when DNA will solve it. The DNA – and I talked to the public administrator about that because the appellant's brief indicates that they were concealing information. Not necessarily concealing, just taking a long time to produce anything. So a judge who's trying to move old cases off her call is middled by the public administrator. Not really, Judge, because the appellant's attorney at the time never pushed for the DNA result, if they had. Again, it's not off record, but the ME had previously advised the PAs, the public administrator's office, that they had the decedent's DNA. And as they started the process, it turns out that they didn't have any. And the expert they had also indicated that because the relationship was too extended, the DNA results would not be much of a result. There was no push or attempt by the appellant's attorney in the trial court to obtain those results or seek any order to disclose them, or anything in the trial court to, as they claim, obtain the DNA results. There were none to obtain. There's nothing in the record to support that either, Your Honor. So I think that's not—the public administrator was reacting to what was going on by the appellant or their father or predecessor. They'd gone through three attorneys. Riley and LaRose would have been the fourth set of attorneys to come in on this person. And I'm referring to the attorney in fact, Mr. Vadim, who appears on record from day one, when the first attorneys from Henshaw withdrew, they do do probate. I've dealt with them for 40 years. They do do probate cases. They withdrew. Then the Gardner-Koch firm and Rallis withdrew. So these were the fourth attorneys coming in for the same issue. But the point is, did the court abuse their discretion? The first motion that was filed by Koch, the Gardner-Koch firm and Rallis, was in January of 17. Then, going through the record, the judge, per the rule, gave those 21 days to appear. Don't you find that kind of unreasonable, dealing with the fact that you're dealing with people, one, that don't speak English, number two, aren't in this country, and number three, have no insight on how to get an attorney? Don't you think that the judge should have given them much longer time and maybe she just was fed up with the case because of the change in the number of attorneys, which, to me, is common? I could give you cases after case where this case is just the middle of the road as to time. But they also had their agent, who they relied on throughout this entire proceeding, from the date their father stepped into this case. Vadim Tavalev was in the United States. He's out of New York. He's the one controlling this case for the petitioners. So it's not unreasonable to have them come in within 21 days. But that's not the only point, Judge. They went in, the judge continued the case for the 21 days, continued the case to March 13th, another two weeks. And then they didn't show up, or they did? Well, they show up, but say, we're not really appearing, Your Honor, but we're here. Because the one cannot? That really didn't come out until well later. When he knew? I don't know. Judge Viale, if you read his affidavit, he did know that he had five signs of war. In fact, he emphatically stated to the judge that he never had anything to do with this case until the judge found one simple continuum. So that was never an issue going in, that Judge Viale could not appear. That only came up way down the road later. So they have March 13th to come in. They step in and say, well, we're here, but we're not appearing. So the judge, all right, even though I had a prior order that says 21 days, I'll give you another 14 days to file an appearance, and that sets forth in that order, enter it on October 13th, March 13th. And she continued the case management date from the prior date to that date. Then, again, it's continued to April 25th, I believe. On that date, they again show up, don't file an appearance, and the judge at that point says, okay, we have a case manager. No one's appearing on behalf of the petitioners. I know in the law division in this circuit and in the chancery, you have case management cases that you don't show up. They DWP the case as a routine matter, of course. That leaves the petitioner to come in or the plaintiff to come in or whoever got dismissed to come in and say something. So then they get continued to the May 25th order. And then after that, no one appears again. After already a couple of chances to come in and file the appearance, we make a motion to dismiss their petition for warrant of prosecution, which the judge grants. Then it's continued again for another date. In the meantime, the public administrator prepares their final account. They give notice of the final account to the petitioners, per their e-mail address. So it's not like they're on regular mail. And then it's continued to the June date. And, again, the court continues it a third time to the July 21 date. Now, on that day is when the so-called petition for leave to appear is filed. No notice of that matter was ever given to any attorney. Counsel in their brief said, we didn't object to the withdrawal for their petition to appear at. We never had the opportunity because we never got notice of it. They walk up again like they did the three previous times and say, oh, we want to appear. And what's more frustrating is that if you look at the motion to appear, after all these continuances, after all these pleadings, all it says is, we want to appear. They don't allege any factual allegations or any statements at all in their motion. Why? Nothing was done for the last six months since the original motion of withdrawal was filed. They give no allegations or plan of action what they want to do. If they want to amend the motion to vacate the DWP, are they going to file anything more to advise the court what's going on and proceed with the prosecution? Did they need to move to appear? No. And that's one of the points they raise. It's really not a substitution. They could have filed their appearance at any time. So why does it matter what they did or didn't explain in the motion? Then they just filed it. Why didn't they file their appearance then? We wouldn't be here, technically. So that's another issue. But what they didn't do is there's nothing in the record to address the notice of the final account. The judge entered an order of discharge, which is the final order, and there was nothing addressed on the final account. There was no objections to the final account. There was nothing done at that point to prevent the court from closing the estate. They were just dragging their feet again. So it's not like on the Sullivan case that the appellant relied heavily on. In that case, the time between the attorney not coming up with the expert witness affidavit to the time the second attorney came in to a substitute was three weeks. Here we have six months from the date the original motion of men to withdraw was filed until the judge closed the estate on July 17th. They had six months to do something. And how long had this case at that point been going on? It was originally filed 11 years ago, Your Honor. So 11 years compared to five. When the heirship was established originally and then, the appellants came in through their father originally to say, no, I'm the rightful heir. So we would find five months or six months extraordinarily lengthy for the attorneys to file their appearance in relation to the 11 years the case has been open? Don't look at it from that perspective. Maybe not. But nothing was being done for that six-month period. It's not just the fact that, you know, there are other attorneys handling the case during that period of time. But here, they come in, six months goes by, they're given three opportunities to appear before the Lord, and like counsel said, the court can't force you to represent someone. But then don't say, after I show up several times, and say, oh, you should, you know, you're abusing your discretion by letting me just step up and say, here I am now, I want to get my foot in the door. Isn't this a case where you could simply admonish the attorneys for, you know, not exercising due diligence in filing the appearance, as opposed to barring them from filing their appearance so that the case can be decided on the merits? That's a possibility, Judge. I can't say there's other sanctions available. Wouldn't that have been a more reasonable approach? I'm not suggesting a sanction, and I'm not. But wouldn't that have been the more reasonable approach? I mean, we all favor deciding cases on the merits as opposed to procedural defaults. Yeah, but with this case, Judge, you look at the record of how frustrating this case has been dealing with appellants and have that six-month issue. But how would it have added to the frustration to just grant the motion to appear? Why was that necessarily going to lead to this? It would be another 11 years before this case gets resolved, Judge. No, let's be realistic. Honestly, Judge? If the case goes back, it's either the DNA is going to fire or it's not. And it may not get to that. There is no DNA, Judge. Well, we'll see. But there again, from the record. So because there were going to be lawyers in the case now, did you feel that that automatically meant this thing was going to be delayed more? No, no. So what's the harm in just allowing the – what is the fact that this has been dragging on or that it took them a long time to appear? What about that means that once they're there, they shouldn't be allowed to appear? Is the charge, you're supposed to say, well, this case has gone on long enough. If I let you in the case, you're going to file a bunch of motions and drag this on? No, I don't think – the point is, you know, I think it's – you look at the court, the courts bend over backwards to give them the opportunity to do something, and they don't. So is that an abuse of discretion? And I don't – under this circumstance here, I don't think it is with the conduct that's been engaged in for the six-month period, plenty of opportunity – it's not like the judge said, no, I'm not letting you appear after the first 21 days expired. She gave them multiple times to do something. And I think that stretches the court's patience and, again, in the law division, chancery, you don't get those out. You get DWP'd right away. And then a motion comes in at least to explain why I didn't comply or why the case management conference order wasn't attended to by the plaintiff or anybody else. And a perfect example here is they file a motion to reconsider. No one even shows up to present it. So much for the fact that counsel filed this motion for leave to appear. Let's just assume for the moment they had simply gone and filed their appearance. Right. Is there any basis upon which the trial court could simply strike that appearance? No. But not only that, what if the judge did allow them to file their appearance? Taking your argument and just flipping it a little bigger. All right. So, right, Mr. LaRose, Judge Riley, you can appear. Okay, I'm still vacating the motion to vacate because it's not sufficiently well-founded. We have notice of the final account. I'm going to approve the final account and enter the order of discharge. So you can appear all you want, but what did you file? They filed nothing to oppose the entry of the order of discharge, to approve the final account. So you're saying it's harmless? I'm sorry? You're saying it's a harmless error? Again, in responding to the judge's question, I say it's harmless, but what effect would their appearance have? Had they put their motion, they just asked, we just want to appear. They didn't ask for any other relief other than I want to appear. Okay, you can appear. So we've all seen cases where lawyers come in late and the judge will say, okay, fine, you're here, but you're not getting any special treatment because you're coming in late. This case is very close to trial or whatever. I'm not moving this trial just because they're switching lawyers. We've all seen judges do that. Right. I've been there, too. Why couldn't that have happened here? Again, what did they ask the court to do? They asked the court to appear. It's just something they have a right to do, right? They can file their appearance on the 12th floor at any time during this proceeding. Yeah, without. Exactly. But what would they have done with the case as it was pending before the judge at that time? Get a motion to vacate a DWP. They'll set for that date on their own motion. They did nothing to address that. The judge ruled on it and dismissed it. It wasn't a basis set forth in the motion to justify a reversal of the DWP. They had the final account on notice more than plenty of time under the statute of the rule, more than a 10-day notice. It was, I think, two months' notice before that. They didn't appear. They didn't address, we object to the accounting, we do anything. So even if they had filed their appearance with what was before the court on that day on July 24th, You're repeating yourself. I'm sorry? You're repeating yourself. then there would have been no basis for the court to do anything but what you did already. So in this case, with the failure then to present anything to request further relief other than just appearing, I don't think the court would use this discretion. All right. Thank you. Thank you. Just a few points. Mr. Kogut speaks outside of the record on a few matters when he says there is no DNA. There is no DNA. It is in the record that at the end of the day in the motion to withdraw, the amended motion to withdraw, the attorneys for Crispin and Lanimir write this lengthy thing, and they said they were told to go to the medical examiner and get the DNA, and then the medical examiner told them there was no DNA from Wanda. But that's not to say there is no DNA and we don't know what would have happened. The bill is extensive. They met with the DNA expert on 12-4, on 12-7. Three of them met with him on 12-7. They talked about it on 12-8. They corresponded with him on 11-2. They corresponded with the follow-up of the DNA analysis on 11-18, and a few more dates. 11-19, 11-23, and 11-23. That's a lot of talk about DNA for something that doesn't exist. Whether they can tie it, I don't know, but that's beyond the record. And that's not before us. No. And also, Mr. Kogut said, Vadim controlled this case from New York. There's nothing in the record to suggest that. It's just a constant smear of my client. Oleg, I don't know when, there's no showing when Vadim came into this case. My client's representative. All we know is that Hinshaw filed an appearance for Oleg, the first appearance in the case, and that was on 8-3-0-7. That was the first entry. Second of all, to say they did nothing for six months is absolutely inaccurate. Judge Riley appeared on April 25th in court, although he had no appearance, but that was two months after they were told. And although the law seems to be, you seem to be clear that they could have just filed an appearance without permission, it's a kind of awkward situation when the judge says, I'm giving you 21 days to get a lawyer, and if you don't comply with it, just for the lawyers to just file appearances, they're in an awkward position. It appears that they didn't need permission, but the judge had made it such, and so it's just an awkward situation. And what could they have done at that point? To say that they didn't do anything because they didn't object to the final accounting, the final accounting isn't the problem here. We're not talking about arithmetic errors in the accounting or overspending or overpayments, Arnstein and Lair. We are talking about who are the errors here. And when on 7-21, the day the court did approve the final accounting, Crispin did file a renewed motion for reconsideration about the airship, and in that document ostensibly that is where there's the actual proof of airship that had been missing previously. They didn't have all of the right documents prior to that, and that is when it came in. Interestingly also, Mr. Kogut says, you know, the judge said, well, you know, in the chancery department division and in the law division, it's a matter of routine matter to enter a DWP when somebody doesn't show up. That's true, but it's also a routine matter to vacate a DWP when you come in within 30 days and ask to have it vacated, and it was sought that my clients did seek to have it vacated within 30 days. So that should have been done as a matter of course as well. Further questions? Thank you very much. Thank you. You both did the best you could with this case. It's kind of unusual having sat in 2005 and had heard a lot of these, and there was a judge there that never wanted to vacate him, and we would be beat up after if we vacated him. And I go, you know, you've got to be fair. So we're kind of stuck with the idea that there should have been one more step. And I know Susan very well, and she's not one that usually ever would do something drastic, but I think she was kind of middled on this by the public administrator. So thank you and have a good holiday. Thank you.